■ In the Matter of MARK COLEMAN, Petitioner, v NORMAN R. BEZIO, as Director of Special Housing and Inmate Disciplinary Programs, Respondent. [913 NYS2d 387]—

McCarthy, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Commissioner of Correctional Services which found petitioner guilty of violating a prison disciplinary rule.

Petitioner was charged in a misbehavior report with using a controlled substance after a specimen of his urine twice tested positive for the presence of cannabinoids. He was found guilty of the charge at the conclusion of a tier III disciplinary hearing and the determination was affirmed on administrative appeal. This CPLR article 78 proceeding ensued.

Petitioner asserts, among other things, that the determination is not supported by substantial evidence because the chain of custody of the specimen was not established in accordance with the regulations (*see* 7 NYCRR 1020.4). Specifically, petitioner claims that the correction officer who tested the specimen was seen in the yard after the specimen was taken and did not have it in his possession at all times. The request for urinalysis form set forth in detail the times that the specimen was taken, tested and disposed of, as well as the name of the individual who handled it. The form was completed by the correction officer who collected and tested the specimen. Although he could not recall if he stayed in the room with the urine sample from the time it was obtained until it was tested and the remainder destroyed, he testified regarding his routine, namely, that if he went anywhere else he would have left the specimens in the testing machine in the locked urinalysis testing room. That officer was the only person with keys to the testing room. This testimony demonstrates that the specimen was either in the correction officer's physical possession or locked in a secure location under his exclusive control, sufficient to establish that the chain of custody was properly maintained (*see Matter of Odome v Goord*, 8 AD3d 921, 922 [2004]). The misbehavior report, the officer's testimony, the positive urinalysis test results and supporting documentation provide substantial evidence to support the determination of guilt (*see Matter of Lindo v Fischer*, 72 AD3d 1295, 1295-1296 [2010]; *Matter of Duffy v Fischer*, 69 AD3d 1073, 1074 [2010]).

Petitioner's remaining contentions have either not been preserved for our review or are lacking in merit.

Peters, J.P., Rose and Kavanagh, JJ., concur.

Egan Jr., J. (dissenting). In my view, the testimony of the correction officer who conducted the urinalysis testing fell below the minimum necessary to establish a reliable chain of custody, and I respectfully dissent.

The concept of chain of custody by no means requires a correction officer performing a urinalysis test on an inmate to literally keep the sample in his or her physical possession from the moment of the draw to the moment of testing. Circumstances may require the officer to put the sample aside and attend to other duties before performing the actual test; assuming the security of the sample can be documented in the interim, I have no quarrel.

In this case, it is apparent from the record that the officer performed tests on multiple inmates that day, and there was a gap of approximately one hour and 25 minutes between receiving and testing petitioner's sample. While first contending that petitioner's sample went from "him to me the whole time," the officer then stated that if it was not in his custody the entire time, it would have been in the urinalysis room. Stating that "anything's possible," the officer explained that, because of the multiple tests conducted that day, he was unsure of the actual sequence of events without checking other records, but that he could explain his "routine," what he does "on a daily basis." Because I believe that hearing testimony as to how the chain of custody is *routinely* maintained can never be a substitute for the case specific testimony, such as we have previously approved in *Matter of Odome v Goord* (8 AD3d 921, 922 [2004]) and *Matter of Graziano v Selsky* (9 AD3d 752, 752 [2004]), I find that an insufficient foundational basis for petitioner's guilt was established and would annul the determination.

Adjudged that the determination is confirmed, without costs, and petition dismissed.